IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| OJORE MULUMBA AJAMU VII, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05cv319 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| DR. GENSLER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Dr. Thomas Gensler, one of the defendants in the above-entitled case, has filed a Motion for Summary Judgment (Filing No. 36) seeking dismissal of the complaint filed by the plaintiff, Ojore Mulumba Ajamu VII, for failure to exhaust administrative remedies in compliance with 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA"). Mr. Ajamu, now a State prisoner, asserts civil rights claims pursuant to 42 U.S.C. § 1983 regarding the period he spent as a pretrial detainee at the Douglas County Correctional Center ("DCCC"). The plaintiff alleges that after he had been treated for epilepsy continuously for 19 years with a prescribed medication (Depakote), the defendants, Dr. Gensler and the DCCC, abruptly and without medical justification cut off the plaintiff's medication in January of 2005, leaving the plaintiff to suffer withdrawal, seizures, adverse physical and mental effects and epileptic symptoms.

Dr. Gensler argues that the plaintiff has not demonstrated exhaustion of administrative remedies because, after the plaintiff submitted his initial grievance, the plaintiff did not appeal the matter to the Chief Deputy of the DCCC. The plaintiff has not responded to the Motion for Summary Judgment, and he may not be aware that a failure to respond to a summary judgment motion may result in the entry of judgment in favor of the moving party.

On the other hand, several issues concern the court. First, an Order (Filing No. 39) has already been entered in this action denying DCCC's Motion for Judgment on the Pleadings on the same exhaustion issue (Filing No. 33) based on the plaintiff's allegations in the complaint that DCCC staff obstructed his access to grievance forms.

Second, the exhaustion requirement serves the important purposes of allowing a prisoner's complaint to be addressed by prison administrators and ensuring that the plaintiff's institution has an opportunity to address the plaintiff's claims *before* they reach federal court. Porter v. Nussle, 534 U.S. 516, 524-25 (2002). In this case, the plaintiff filed a grievance and 35 pages of successive inmate interview requests ("kites") in which he asked for his medication and described the adverse symptoms experienced after his epilepsy medication had been withdrawn (see Filing No. 13). Thus, the absence of actual notice of the plaintiff's claims does not appear to constitute an issue in this case.

In addition, the records of the court suggest that some confusion may exist in the DCCC inmate population as to the "appeal" step of the grievance process.[1] The *Inmate Rules and Regulations Handbook (2002)* (Filing No. 38-5), allows an appeal from denial

---

[1] The *Inmate Rules and Regulations Handbook (2002)* (see Filing No. 38-5), section II.11.1 *et seq.*, sets forth the grievance procedures in effect at DCCC. The procedure starts with the initial formal grievance contemplated by section II.11.2.A of the Handbook, followed by an optional "appeal to the Chief Deputy," as set forth in section II.11.2.C. Section II.11.2.D of the Handbook states that inmates who disagree with the decision by the Chief Deputy are free to pursue other remedies such as an action in court.

However, as the court's records in similar cases indicate, Ann O'Connor served as the Chief Deputy of the Douglas County Department of Corrections, with oversight of the DCCC, from March 1999 through April 2003. See, e.g., Case No. 8:02cv533, Allen v. Douglas County Jail, et al., Exhibit 2 to Filing No. 21, Affidavit of Ann O'Connor dated July 21, 2003. See also Case No. 4:02cv3255, Scott v. Douglas County, et al., Exhibit 2 to Filing No. 25, Affidavit of Ann O'Connor dated October 27, 2003. Since O'Connor's departure, it seems that there has been no official bearing the title of Chief Deputy at the DCCC.

of the plaintiff's initial grievance to the "Chief Deputy" of the DCCC.  However, evidence in other cases before this court suggests that there has been no official bearing the title of Chief Deputy at the DCCC since the departure of Ann O'Connor in April of 2003.  Instead, each successive official hired to run the DCCC has been known to the prison population as "Director," with the exception of Captain Hubbard, who held an interim title between Directors, and whose interim title was not Chief Deputy.

In <u>Jones v. Bock</u>, 127 S. Ct. 910, 921 (2007), the U.S. Supreme Court recently clarified the fact that exhaustion of remedies is an affirmative defense; that there is no "total exhaustion" rule with respect to claims; that the names of the defendants need not appear in administrative grievances; and that a plaintiff does not have to allege and demonstrate exhaustion in his or her complaint.  While exhaustion of remedies serves important policy interests and indeed is mandated by the PLRA, there are occasions when the issue may have to be deferred for resolution at trial.  At a minimum, the court will require the plaintiff to respond to Dr. Gensler's Motion for Summary Judgment and to state any reason he may have why he did not file a grievance appeal to the Chief Deputy.

IT IS ORDERED:

The plaintiff shall respond to the Defendant's Motion for Summary Judgment by filing a verified statement[2] within eleven days from the date of this Memorandum and Order, explaining any reason he may have for failing to submit a "Chief Deputy grievance."

DATED this 26th day of February, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

[2] The statement shall bear the following language above the plaintiff's signature and the date:  "I declare under penalty of perjury that the foregoing is true and correct."

3